UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ANTOINETTE C. TAYLOR | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-24-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| JPMORGAN CHASE BANK, N.A., et al. | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When Chase Bank employees July Fry and Jamie James placed a hold on Antoinette Taylor's check, Taylor claims that they engaged in racial discrimination, negligently and intentionally caused her emotional distress, breached their fiduciary duties, implicated the doctrines of *res ipsa loquitur* and *respondeat superior*, exhibited negligence in hiring, retaining, training, and supervision, as well as retaliated and conspired against her. [R. 1-3 at 43, R. 7, R. 11-2]. Taylor asserted these claims in a span of three complaints in just over one month. The Bank Defendants have moved to dismiss two of the complaints under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted [R. 6; R. 16], and to deny Taylor leave to file the third complaint on the grounds of futility. [R. 22]. Having now reviewed the exhaustive motions of the parties, the Court shall **GRANT** Chase Bank's Motions to Dismiss, **DENY** Taylor's Motion for Leave to File a Second Amended Complaint, and **DISMISS** this action from the Court's docket.

I

Antoinette Taylor is an African-American woman who maintains a personal checking account at JPMorgan Chase Bank. On March 12, 2013, Taylor visited the Hi Point Branch of Chase Bank in Shelbyville, Kentucky for the purposes of depositing a check in the amount of $3,500 that she had received from her wireless telephone company. Taylor claims that Julie Fry, a Caucasian woman who was working at the bank at that time, indicated that she had the same wireless company and asked why Taylor had received this amount of money from them. Fry also asked Taylor "personal and irrelevant questions," which Taylor does not further describe. [R. 1-3 at 46]. Fry then left Taylor alone at the teller window for approximately fifteen minutes. While Fry was away from the window, Taylor claims that she overheard her call the fraud department and report Taylor's check. Fry returned to inform Taylor that her check looked, "suspicious, fake, and fraudulent." [R. 1-3 at 47]. Even so, Taylor claims that Fry told her that the check did not require any banking holds and the money would be available after midnight of the next day. Unfortunately, this encounter made Taylor late for her next appointment.

Later that day, Taylor indicates that she received a call from Jamie James, the Chase Bank branch manager, who informed her that her check looked "fake, fraudulent, and suspicious to her too because it did not line up like other checks." [R. 1-3 at 47]. Chase Bank's policy, which was attached as an exhibit to Taylor's First Amended Complaint, clearly indicates that under circumstances where Chase Bank, "believe[s] a check you deposited will not be paid…funds may not be available until the seventh business day after the day of your deposit." [R. 7-1]. James placed a hold on the check, which Taylor says lasted for seven days. [R. 9 at 3]. Taylor received the funds about one week after depositing the check.

Taylor, however, did not take the actions of Chase Bank lying down. On the same day that she was informed that a hold would be placed on the check, she contacted the Chase Bank district manager "to resolve said matter outside of court intervention." [R. 1-3 at 48]. Evidently unsatisfied with the response, the next day she filed a formal complaint with the district manager, sent a letter to Chase Bank, and filed a complaint with Federal Reserve System. On April 2, 2013, when she received word from Chase Bank that they would not take action on her complaint, she initiated the instant action in Shelby County Circuit Court. Her Original Complaint claimed that the Bank Defendants had discriminated against her on the basis of race in violation of 42 U.S.C. § 2000 *et seq*., 42 U.S.C. § 1981, KRS 344.000, and the First, Thirteenth, and Fourteenth Amendments to the United States Constitution. [R. 1-3]. She also claimed that the Bank Defendants had engaged in the negligent and intentional infliction of emotional distress.

The Bank Defendants removed this case to federal court on May 5, and timely filed their first motion to dismiss. [R. 1; R. 6].[1] The next day, Taylor filed her First Amended Complaint. [R. 7]. Therein, Taylor "removed" her claims made under Title VII and the Kentucky Civil Rights Act and added additional claims for breach of fiduciary duties, "*res ipsa loquitur* and *respondeat superior*," negligent hiring, retention, and training, and negligent supervision. [R. 7.].[2] Five days later, Taylor apparently changed her mind again, and sought leave to file a

---

[1] Taylor moved for default judgment against Chase Bank on the grounds that it filed its responsive pleading out of time. In her recent filings, Taylor continues to labor under the misconception that this case is appropriately resolved in default judgment. However, as the Court has already stated in detail, neither this Court nor its state counterpart has entered default judgment in this case. [R. 15].

[2] Taylor's amended complaints do not appear to operate in the typical manner. The Court, in its best effort to ascertain Taylor's intent, shall consider the First Amended Complaint as essentially modifying the Original Complaint. Thus, the First Amended Complaint does not become the governing complaint, but merely adds certain claims to and removes certain claims from the Original Complaint.

Second Amended Complaint.  [R. 11].  Taylor's tendered Second Amended Complaint is somewhat of an enigma.  She clearly expresses her intent to remove prior claims asserted under 42 U.S.C. § 2000 *et seq.*  From there Taylor sets forth a nebulous hodgepodge of statutory sections, federal regulations, case law, and constitutional amendments, most of which are echoing counts from previous complaints.  What is clear is that Taylor seeks leave to add two additional counts to her prior complaint – retaliation and conspiracy.

The Bank Defendants countered with a motion to dismiss the First Amended Complaint, maintaining that Taylor had still failed to state a claim upon which relief could be granted.  [R. 16].  The Bank Defendants also responded in opposition to the motion for leave to file a Second Amended Complaint on the grounds that the newly asserted claims were futile.  [R. 22].  Rather than address the arguments of the Bank Defendants with reasoned legal analysis, Taylor has chosen to respond by simply listing the arguments of the Bank Defendants and stating, "Taylor disagrees." [R. 18; R. 23].

Finally, Taylor has also filed two additional motions.  The first is a Motion for Partial Remand, which sets out the general law for remand and then seems to renew Taylor's mistaken assertions that the state court has granted default judgment in this matter and the Bank Defendants' removal was untimely.  [R. 19].  The second is a Motion to Present Additional Evidence wherein Taylor alleges additional facts concerning a subsequent encounter with the Bank Defendants, during which she was denied the services of a notary public.  [R. 28].  The Bank Defendants responded that the circumstances of the latter motion have prompted Taylor to file a bar complaint against Chase Bank's counsel in this matter and also to initiate a second lawsuit for the purposes of circumventing the normal discovery process in this case.  [R. 30; R.

32].  In the wake of the waves of legal filings made by Taylor related to this action, the Bank Defendants have requested an expedited and emergency status conference to address the pending matters.  [R. 37].  The Court shall first, however, turn its attention to the Bank Defendants' motions to dismiss to determine if, in her many attempts to do so, Taylor has articulated plausible claims upon which relief may be granted.

## II

## A

Courts liberally construe the pleadings of *pro se* claimants and hold their complaints to a less stringent standard than similar pleadings drafted by attorneys.  *Hahn v. Star Bank,* 190 F.3d 708, 715 (6th Cir.1999) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972)).  As the Court has previously warned Taylor, "this lower standard does not, however, mean that a *pro se* plaintiff is entitled to bring every case to trial."  *Taylor v. Peach Properties-Osprey Cove, LLC*, CIV.A. 3:10-65-DCR, 2010 WL 4320395 (E.D. Ky. Oct. 22, 2010).  Even *pro se* plaintiffs must allege sufficient facts to state a plausible claim in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[3] *Garrett v. Belmon Co. Sheriff's Dept.,* No. 08–3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010); *Nat'l Bus. Devel. Serv., Inc. v. American Credit Educ. and Consulting, Inc.,* 299 F. App'x 509, 511 (6th Cir. October 31, 2008); *Zibbell v. Michigan Dept. of Human Servs.,* 313 F. App'x 843, 846 (6th Cir. February 23, 2009).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon with relief can be granted.  Fed.R.Civ.P. 12(b)(6).  In

---

[3] When referring to the standard that she must meet in order to survive a motion to dismiss, Taylor cites several Kentucky cases.  However, as her claim in properly proceeding in federal court, Chase Bank's motion to dismiss is governed by the *federal* procedure set forth in Rule 12(b)(6) as interpreted by subsequent *federal* case law.

reviewing a Rule 12(b)(6) motion, the Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 716 (6th Cir. 2005). To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Additionally, as is now well known, the Supreme Court has clarified that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In amassing sufficient factual matter, plaintiffs need not provide "detailed factual allegations," but must advance "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "a formulaic recitation of the elements of a cause of action." *Id*. (citing *Twombly*, 550 U.S. at 555). Though courts must accept all factual assertions as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citing *Twombly*, 550 U.S. at 556). Thus, it is incumbent upon the Court to first sort through the plaintiff's complaint and separate the real factual allegations, which are accepted as true and contribute to the viability of the plaintiff's claim, from the legal conclusions that are only masquerading as facts and need not be accepted.

Once the Court has discarded the legal conclusions, the question becomes whether the actual remaining facts state a plausible claim for relief. Plaintiffs do not succeed in making a claim plausible by adorning to their complaints with facts creating a "sheer possibility that a defendant has acted unlawfully" or facts that are "merely consistent with a defendant's liability." *Id*. (citing *Twombly*, 550 U.S. at 557). Instead, "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

B

1

When considered in light of the subsequent amendments of the First and Second Amended Complaints, Count One of the Original Complaint alleges that the Bank Defendants engaged in intentional racial discrimination against Antoinette Taylor in violation of 42 U.S.C. § 1981 as well as the First, Thirteenth, and Fourteenth Amendments to the United States Constitution. [R. 1-3].[4] The Court shall consider each ground in turn to determine whether Taylor's complaint states a claim for relief that is plausible on its face.

a

Section 1981 "protects the equal right of all persons ... to make and enforce contracts without respect to race." *Brintley v. St. Mary Mercy Hosp.*, 2013 WL 6038227 at *2 (6th Cir. Nov. 15, 2013) (quoting *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 474, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006)). The text of the statute sets forth two major elements of a Section 1981 claim: "[f]irst, the plaintiff must possess some contractual right that the defendant blocked or impaired," and "[s]econd, the plaintiff has to demonstrate that racial discrimination drove the decision to interfere with these contractual rights." *Williams v. Richland Cnty. Children Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012). The Sixth Circuit has made clear that Section 1981

---

[4] Even if Taylor's complaints had not expressly removed any claims made under Title VII, the Kentucky Civil Rights Act, and 42 U.S.C. § 2000 *et seq*., it is clear that those claims would suffer similar deficiencies to the remaining racial discrimination claims discussed below, and that Taylor's complaint would have been insufficient to properly place the defendants on notice of the claims they were to defend against or to set forth a claim that was plausible on its face. *See Morgan v. HSBC Mortgage Servs., Inc.*, 930 F. Supp. 2d 833, 836 (E.D. Ky. 2013).

claims are not immune from the requirements of *Iqbal* and *Twombly*, and in order to survive a

motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must, "plead sufficient facts to

state claims of race….discrimination that are plausible on its face." *Sam Han v. Univ. of Dayton*,

13-3048, 2013 WL 5943207 at *3 (6th Cir. Nov. 5, 2013). That is to say, a plaintiff's complaint

"must allege sufficient 'factual content' from which a court, informed by its 'judicial experience

and common sense,' could draw the reasonable inference that Defendants discriminated against

Plaintiff with respect to his race…." *Id.* (citing *Keys v. Humana, Inc.,* 684 F.3d 605, 610 (6th Cir.

2012)).[5]

     In *Sam Han*, the University of Dayton did not renew its contract with a law school

professor, and the professor sued under Section 1981 alleging that this adverse action constituted

racial discrimination. The Sixth Circuit found that the district court rightfully dismissed the case

because the law professor's "complaint lists conclusory allegations of discrimination and fails to

provide, as required by *Twombly* and *Iqbal,* the 'sufficient factual matter' necessary to create an

inference of discrimination." *Id.* To illustrate this conclusion, the court described the inadequate

complaint as follows:

     Certainly, Plaintiff pleads his own race and gender, and alleges that, as a result of

---

[5] This Court is aware that Taylor need not make out a *prima facie* case of discrimination under Section 1981 to
survive dismissal. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511 (2002). However, as discussed, the Sixth
Circuit still requires Taylor to at least set forth enough facts to give rise to a reasonable inference of racial
discrimination. Other courts to have considered the matter agree, noting that a plaintiff must plead facts in support
of the following elements in order for their Section 1981 claim to survive a motion to dismiss.

     (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race
     by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in
     the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).

*Greene v. YRC, Inc.,* CIV.A. MJG-13-0653, 2013 WL 6537742 at * 9-10 (D. Md. Dec. 12, 2013) (citing *Mian v.
Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993); *Jordan v. Alternative Res. Corp.,* 458
F.3d 332, 345 (4th Cir.2006)).

his race and gender, he was given a bad evaluation by the PRT committee and
then ultimately fired. However, Plaintiff alleges no set of facts, beyond these bare
and conclusory assertions, from which a reasonable person could infer how his
race or gender factored into the University's decisions regarding his employment
or caused him to lose his job, as opposed to any other, non-discriminatory basis
for decisions regarding his employment.

Id. at *4.   The court also noted that the complaint contained the plaintiff's conclusion that he

was treated differently than employees of other races, but the court found this to be ineffectual

because the plaintiff "offered no specifics regarding who those employees were or how they

were treated differently."  *Id*. at *4.  Dismissing such a complaint, which contains only

conclusory allegations of racial discrimination that are unsupported by fact, is consistent with the

holdings of several courts that have considered the issue in similar statutory contexts.  *See Nali v.

Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) (In upholding the dismissal of a Section 1985

claim, the Sixth Circuit stated, "[t]he fact that 'defendants are caucasian' and that Nali 'is non-

caucasian' does not by itself show that defendants were motivated to discriminate against him on

the basis of his race or ethnicity."); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-

91 (4th Cir. 2010) (In upholding the dismissal of a Title VII claim, the Fourth Circuit stated,

"[h]ere, although Coleman's complaint conclusorily alleges that Coleman was terminated based

on his race, it does not assert facts establishing the plausibility of that allegation.");  *Harris v.

Cmty. Alternatives*, 5:11-CV-52-D, 2011 WL 2111851 at *2 (E.D.N.C. May 26, 2011) (In

dismissing a Section 1981 claim, the district court stated, "Harris conclusorily alleges that she

was terminated based on her race, but the complaint does not assert facts establishing the

plausibility of that allegation." (internal quotation marks omitted)).

      For the same reasons that the claims were dismissed in the aforementioned cases,

Taylor's Section 1981 claim is also deficient. Taylor's complaint alleges that, "Defendants willfully and intentionally called Ms. Taylor's corporate check for $3,500 suspicious, fake, and fraudulent solely based on her race, African-American and they denied Ms. Taylor the same terms and conditions as those afforded to her similarly situated Caucasian banking customers." [R. 1-3 at 48]. However, Taylor's bare assertions that the Bank Defendants engaged in adverse actions against her on the basis of her race and treated her differently than customers of others races are not factual allegations; rather, they are conclusory statements that the Court need not accept as true. To state a plausible claim, Taylor must also set forth sufficient facts that would enable the Court to reasonably infer that these conclusions are correct.

In sifting through the actual facts of the complaint, the Court notes Taylor alleges, among other things, that she is an African-American woman, that the employees of Chase Bank that she interacted with were Caucasian women, that she deposited a check at Chase Bank, that Fry and James stated that the check appeared fraudulent, and that Chase Bank placed a hold on the check even though they told her initially that they did not plan to do so. These are unquestionably facts that this Court must accept as true for the purposes of the motion to dismiss, but they are no different than the facts that the Sixth Circuit found to be insufficient to save the Section 1981 claim in *San Han*. In both cases, the reason for the dismissal is that the facts asserted are just *consistent* with the claims made, such that racial discrimination is merely *possible* on the facts. Absent from all of Taylor's complaints are factual allegations from which a reasonable person could infer that that racial animus was a factor in the bank's decision to place a hold on her check. Taylor makes no specific factual allegations that she heard Fry or James use racially insensitive words, that she has knowledge that they deposited similar checks for customers of

10

different races without holds, that she routinely is unable to utilize the bank's services in ways that she knows customers of other races are able to do, or of any other detail that might suggest that the actions of Fry and James were in any way related to Taylor's race.[6]  Without similar specific factual support, Taylor's claim for racial discrimination is not plausible on its face.

To be clear, the Court does not intend to minimize Taylor's own subjective feelings of discrimination or the resulting emotional effects that she has experienced.  The Court simply finds that, after Taylor has told the full story of the hold that the bank placed on her check and alleged all the facts that she had, her claim does not clear the minimum procedural threshold to subject the Bank Defendants to litigation in this Court.  Taylor's complaint does not allege sufficient facts to give rise to a reasonable inference of racial discrimination, and thus her Section 1981 claim is not plausible on its face and must be dismissed.

b

Taylor's claims of racial discrimination are no more successful when asserted on the grounds of the First, Thirteenth, and Fourteenth Amendments to the United States Constitution. Though Taylor's original complaint is largely silent as to the applicability of these amendments to her factual circumstances, she does elaborate somewhat in her tendered Second Amended Complaint.  Therein, Taylor cites the *Griswold v. Connecticut*, 381 U.S. 479 (1965), a case discussing contraception, for the proposition that Chase Bank had violated her rights to privacy that are protected in the "penumbra" of the First Amendment.  [R. 11-2 at 3].  Taylor adds that

---

[6] On the contrary, Taylor's own complaint seems to suggest that the Fry and James were potentially following Chase Bank's general policy that applies to all its customers, regardless of race.  Chase Bank's "Funds Availability Policy" policy, which was attached as an exhibit to Taylor's First Amended Complaint, clearly indicates that under circumstances where Chase Bank, "believe[s] a check you deposited will not be paid…funds may not be available until the seventh business day after the day of your deposit." [R. 7-1].

that the Bank Defendants violated the Thirteenth Amendment, which prohibits slavery and involuntary servitude, because they, "operated their bank like a slave hold for African American banking customers as evidenced by utilizing a seven (7) days holding cell on Plaintiff's funds without her consent to do so." [R. 11-2 at 3]. Taylor's filings never specify how the Fourteenth Amendment applies.

Plaintiffs may seek vindication for constitutional harms under 42 U.S.C. § 1983, which subjects every person acting under color of state law to liability for depriving another of the "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, "[a]s a general rule, '[s]ection 1983 does not ... prohibit the conduct of private parties acting in their individual capacities.'" *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 783 (6th Cir. 2007) (quoting *Lindsey v. Detroit Entm't, LLC,* 484 F.3d 824, 827 (6th Cir.2007)). In order to state a claim for a constitutional violation under Section 1983 against the Bank Defendants, who are private and individual defendants, Taylor must allege some facts that would provide a reasonable inference that the "the alleged infringement of federal rights [is] fairly attributable to the State." *Id.* at 783-84 (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 838 (1982)).

Taylor has failed to allege facts that would support a reasonable inference that the activity of the Bank Defendants could qualify as state action under any of the measures articulated by the Supreme Court. Taylor has not presented the court with any facts that would suggest that Chase Bank was performing a public function, being compelled to act by the coercive power of the state, or existing in symbiotic relationship such that the bank's action could be fairly attributable to the state. *See Id.* at 783-84; *Chapman v. Higbee Co.,* 319 F.3d 825, 833-34 (6th Cir.2003);

12

*Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). On the contrary, the facts asserted by Taylor show the Bank Defendants to be no more than a private bank and its employees operating under the bank's internal policies for the bank's private interests. As such, Taylor has failed to state claim for racial discrimination on constitutional grounds, and the claims of Count One of her original complaint shall be dismissed.

2

Count Two of the Taylor's Original Complaint alleges negligent infliction of emotional distress. However, as recognized by the Bank Defendants, Taylor's factual allegations appear to be more closely related to a claim for intentional infliction of emotional distress. Because Taylor is proceeding *pro se* and her complaint must be construed liberally, the Court shall address both potential causes of action.

Though it is not entirely clear, it appears from Taylor's complaint that she is alleging that when the Bank Defendants placed a hold on her check, they discriminated against her and humiliated her in a manner that gave rise to mental anguish. Kentucky recognizes a claim for negligent infliction of emotional distress and recently removed the requirement that a physical impact was required. *Osborne v. Keeney*, 399 S.W.3d 1, 14 (Ky. 2012). However, the Kentucky Supreme Court has noted that a plaintiff may only recover under this state-law tort if the emotional injury suffered is serious or severe. *Id*. at 17. Such an injury occurs only where, "a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." *Id*. at 17 (citing *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983); Restatement (Second) of Torts § 46)). In contrast, "[d]istress that does not significantly affect the plaintiff's everyday life or require significant treatment will not

suffice." *Id*. at 17 (citing *Norfolk & W. Ry. Co. v. Ayers,* 538 U.S. 135, 137 (2003)).

Though this change to the Kentucky case law is relatively recent and, as a result, has not been significantly developed by the Kentucky courts, the facts alleged in Taylor's complaint certainly could not be said to qualify as serious or severe under the definition in *Osborne*. Accounting for the fact that the Court need not accept the legal conclusion that Taylor's race was a motivating factor in the events of her complaint, Taylor essentially just had to wait about a week to collect money from a check. The Court does not doubt that Taylor was embarrassed by having her check classified as fraudulent by the bank, but, as noted by the Kentucky Supreme Court, "emotional tranquility is rarely attained and [] some degree of emotional harm is an unfortunate reality of living in a modern society." *Id*. at 17 (citing Restatement (Third) of Torts: Phys. & Emot. HarmM § 46 cmt. 1 & § 47 cmt.j.)). Taylor has alleged no facts that would allow the Court to make a reasonable inference that any emotional damage resulting from the hold on her check was anything more than the ordinary, everyday emotional harm that is not actionable under Kentucky law.

To state a claim for intentional infliction of emotional distress under Kentucky law, Taylor must show, among other things, that the Bank Defendants engaged in conduct that was "outrageous" or "a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004). The Kentucky Supreme Court has classified this as a "high threshold," which was not crossed, for example, in a case where the defendant did not pay medical expenses arising out of an injured worker's compensation claim or a case where the defendant wrongfully garnished wages as a result of a forged agreement. *Id*. at 789 (citing *Zurich Ins. Co. v. Mitchell,* Ky., 712 S.W.2d 340,

14

341 (1986); *Kentucky Farm Bureau Mutual Ins. Co. v. Burton,* Ky.App., 922 S.W.2d 385

(1996)).  On the other hand, the Kentucky courts did find the defendant's conduct to be

outrageous when he, "subjected plaintiff to nearly daily racial indignities for approximately

seven years." *Id.* at 790. (citing *Wilson v. Lowe's Home Center,* Ky.App., 75 S.W.3d 229, 238

(2001)).  Taylor's claims that the Bank Defendants were intentionally trying to belittle her and

coerce her into going to another bank, even if accepted as true, appear more like the other cases

that have been found insufficiently outrageous to cross the high threshold of an intentional

infliction of emotion distress claim.  Therefore, because the real factual allegations of Taylor's

complaint accuse the Bank Defendants of nothing that deviates from "all bounds of decency" or

that is "utterly intolerable in a civilized community," her claim for negligent infliction of

emotional distress shall be dismissed.  *Id.* at 791.

3

Taylor's next claim appears as the first claim in the First Amended Complaint, but is

numbered as the "Third Cause of Action for Count III – Breach of Fiduciary Duty, Duty of

Loyalty Duty of Care."  [R. 7 at 2].  Construing the complaint liberally, the Court shall simply

treat this as the third claim in a composite complaint, alleging that the Bank Defendants breached

the fiduciary duties it owed to Taylor.

Under Kentucky law, a fiduciary relationship is "founded on trust or confidence reposed

by one person in the integrity and fidelity of another and which also necessarily involves an

undertaking in which a duty is created in one person to act primarily for another's benefit in

matters connected with such undertaking." *In re Sallee*, 286 F.3d 878, 892 (6th Cir. 2002) (citing

*Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 485 (Ky.1991)).  The Sixth Circuit

has previously noted that, "[e]xcept in special circumstances, a bank does not have a fiduciary relationship with its borrowers." *In re Sallee*, 286 F.3d 878, 893 (6th Cir. 2002). The special circumstances appear to be when the bank profited at the borrower's expense. *Id.*

Taylor alleges that she established a fiduciary relationship with Chase Bank by opening a checking account with them and justifiably relied on the bank to act in her best interest when they managed her personal accounts. However, in Taylor's view, the Bank Defendants did not act in her best interest by, among other things, calling her check fraudulent, placing a hold on the check, sharing her confidential information, failing to "share the secret" with her that her account was overdrawn, failing to use their best efforts on her behalf, and profiting at her expense. [R. 7 at 2-5]. Taylor believes that this conduct was, "outrageous, plain evil and reckless disregard of the Plaintiff's rights." [R. 7 at 5].

Despite these allegations, Taylor has not sufficiently presented facts that would show in what ways her relationship with Chase Bank was different from other customers who Kentucky courts found not to have a fiduciary relationship with their banks. Instead, it appears that Taylor's relationship with Chase Bank is no different than other bank customers, which is generally not considered to give rise to special fiduciary duties. Taylor does mention that the Bank Defendants profited from the hold that they placed on her account; however, she has not provided any facts that support this conclusion or show how the bank profited. Thus, under the facts asserted by Taylor, it would appear that Kentucky law affords no fiduciary duties for the Bank Defendants to have breached, and her claim may therefore be dismissed.

4

The Court need not linger long at Taylor's fourth claim, for it is no claim at all. Taylor

purports to bring a cause of action for *res ipsa loquitur* and *respondeat superior*; however, neither are technically independent causes of action under Kentucky law.

Though *res ipsa loquitur* is a doctrine that may be used to show that a defendant was negligent, the cause of action itself is still negligence. *See Bell & Koch, Inc. v. Stanley*, 375 S.W.2d 696, 697 (Ky. 1964). (Stating that the doctrine of *res ipsa loquitur*, "recognizes that as a matter of common knowledge and experience the very nature of an occurrence may justify an inference of negligence on the part of the person who controls the instrumentality causing the injury."). "The doctrine does no more than recognize the persuasive force of a particular kind of circumstantial evidence." *Id.* Thus, *res ipsa loquitur* may not, on its own, constitute a viable cause of action against the Bank Defendants.

The same is true of *respondeat superior*, which is also not a cause of action, but "the theory that where one acts through the agency of another, in legal contemplation, he is himself acting and thus is responsible for acts of his agent." *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). Chase Bank readily admits that Fry and James are its employees. However, unless Taylor states a claim upon which relief may be granted against those employees, *respondeat superior* may not be used to either impute liability to Chase Bank or as an independent cause of action.

There is some hint from this count that Taylor is attempting to assert a negligence claim. For example, at paragraph 63 of her First Amended Complaint, Taylor mentioned that the bank's employees failed to act reasonably and violated the standard of care, causing her injury by not being able to access her funds the next business day. [R. 7 at 6]. However, even under the more liberal review of the complaint required for a *pro se* litigant, something more definite would

17

certainly be required to even put the defendants on notice of the claim they are defending against, let alone state a claim that is plausible on its face. Thus, the Court is unwilling to construe the vagaries of Taylor's complaint as asserting a claim for negligence.

5

Taylor's fifth and sixth causes of action appear in the First Amended Complaint, and assert claims under Kentucky law for negligent hiring, retention, training, and supervision. Though these are separate claims, as they are related and afflicted with the same flaw, the Court shall discuss them together.

To make out a claim for negligent hiring or retention under Kentucky law, a plaintiff must show: "(1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Stalbosky v. Belew,* 205 F.3d 890, 894 (6th Cir.2000) (citing *Oakley v. Flor–Shin Inc.,* 964 S.W.2d 438, 442 (Ky.Ct.App.1998)). In Kentucky, negligent supervision claims are governed by the Restatement (Second) of Agency, which requires a plaintiff to show that an employer was negligent or reckless "(a) in giving improper or ambiguous orders or in failing to make proper regulations; (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; (c) in the supervision of the activity; or (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control*." Stanley v. Our Lady of Bellefonte Hosp., Inc.*, CIV.A. 11-110-DLB, 2012 WL 4329265 at *9 (E.D. Ky. Sept. 20, 2012) (citing Restatement (Second) of Agency § 213 (1958)). In each case, there must be some foreseeability or awareness on the part

of the employer that the employee created the risk at issue. *See Oakley,* 964 S.W.2d at 442 ("the established law in this Commonwealth recognizes that an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person."). *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) ("Specifically, Booker's complaint failed to allege that Verizon knew or should have known that the employee who drafted the electronic message would act as he or she did. While Booker alleged that Verizon had a duty to supervise its employees and that it failed to satisfy this duty, this Court is not bound to accept bare legal conclusions unsupported by factual allegations.").

Taylor's First Amended Complaint attempts to demonstrate that Chase Bank was negligent in hiring, retaining, training, and supervising Fry and James because these employees were "not fit to work with African-American and People of Color banking customers." [R. 7 at 9]. Taylor sets forth a barrage of allegations about Fry and James, including that they lacked training in cultural diversity, were without cultural sensitivity, they lacked respect and tactfulness with African-American banking customers, they unconsciously did not trust African-American customers, and they lacked experience in dealing with African-American customers. [R. 7 at 7-9]. What are noticeably missing, however, are the factual allegations that show how these problems had previously manifested themselves such that Chase Bank should have been aware that Fry and James might incite disparate racial treatment at the bank. In fact, as previously discussed, Taylor's complaint is devoid of any truly factual allegations that specify in what ways she arrived at her conclusions that the actions taken by Fry and James were in any way related to her race. There is no allegation that Fry or James customarily used racially insensitive words, previously deposited similar checks for customers of different races without holds, had a

reputation as being racially intolerant, or were members of racially intolerant groups at the time of the incident or any time before, such that Chase Bank should have foreseen any dangerous propensities. The closest Taylor comes to making such a statement is that, "Ms. Fry appeared to be uncomfortable in working with African-American banking customers in her role as assistant branch manager. And JPMorgan Chase Bank knew that, but they wanted to hire only Caucasian banking employees to fill the assistant branch manager position." [R. 7 at 7]. This is simply not enough to create a reasonable inference that Taylor was discriminated against at the time in question, or that Chase Bank should have foreseen or been aware that Fry and James were racially intolerant such that their hiring, retaining, training, and supervising of these employees was negligent. Those claims shall, therefore, be dismissed.

III

A

Having dismissed all of the claims set forth in the Original Complaint and the First Amended Complaint, the Court now turns to Taylor's motion for leave to file a Second Amended Complaint. [R. 7]. Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which provides that even if the party does not seek the amendment within the enumerated period, the court may give leave to permit such an amendment and should "freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). The United States Supreme Court has read this provision broadly and the Sixth Circuit has recognized that "where the underlying facts would support, a motion for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake*, Inc., 195

F.3d 828 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).  The Bank Defendants have opposed this motion on the grounds that the asserted claims are futile.  The Sixth Circuit, "has addressed the issue of 'futility' in the context of motions to amend, holding that where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993) (citing *Neighborhood Development Corp. v. Advisory Council on Historic Preservation,* 632 F.2d 21, 23 (6th Cir.1980)).  Thus, the Court shall engage in an analysis similar to the one conducted above to determine whether Taylor should be granted leave to file her Second Amended Complaint or whether the futility of the asserted claims counsels denying the motion.

B

Before turning to the viability of the substantive claims of the Second Amended Complaint, some preliminary analysis is required to ascertain what claims this pleading is actually asserting.  As with the First Amended Complaint, Taylor notes her intent to remove certain claims that she has previously asserted, and then seeks to add two new claims, not by tendering a completely new complaint, but by numbering the new causes of action from where she left off in the previous complaint.  Thus, the first new claim asserted in the Second Amended Complaint is numbered as the seventh cause of action, and the second new claim is numbered as the eighth cause of action.  On the Court's review of the complaint, it appears that these are the only two new causes of action being asserted in this pleading.

However, unlike the previous two complaints, the Second Amended Complaint contains a convoluted preamble that purports to "add violations" of a lengthy list of statutes,

constitutional amendments, and even banking regulations. [R. 11-2]. It is, frankly, unclear to the Court the exact meaning of this section of the complaint. Some of the cited statutes seem to be repetitive of prior claims, while others appear to be new or encompassed in the claims enumerated in the complaint. Either way, simply citing a statue and articulating what that statute says is insufficient to provide notice to the Defendant or to state a claim that is plausible on its face. Thus, even if the preamble of this complaint could be considered to contain additional claims against the Bank Defendants, the Court would not grant leave to file an amended complaint containing those futile claims.[7]

1

Taylor's first new cause of action raised in her Second Amended Complaint is for retaliation. After incorporating the previous factual allegations by reference, Taylor characterizes her claim as follows: "[w]hen Plaintiff reframed from divulging confidential information about her personal affairs with Fry, James retaliated against Plaintiff solely based on race, African American as evidenced by secretly interrupting the normal local bank reviewing process and placing the Plaintiff's corporate check from $3,500.00 on a seven (7) banking hold, instead of a two day hold in accordance with the policy. See Plaintiff's Response in Opposition to Defendants' Motion to Dismiss For Failure to State a Claim under Rule 12(b)(6) Section B ¶¶ 9-16." [R. 11-2 at 8]. Taylor says nothing further in her complaint about this retaliation claim.

---

[7] Also included in Taylor's preamble to her Second Amended Complaint, is her indication that her amended complaint, "will make a request for preliminary injunctive relief under 42 U.S.C. § 1981." [R. 11-2 at 5]. She claims that this injunction is necessary to avoid further discrimination and is justified because there is a likelihood of success of the merits of her racial discrimination claims. However, even if this could be construed procedurally as a motion for a preliminary injunction under Rule 65, because neither Taylor's claim under Section 1981 nor the additional claims asserted in the Second Amended Complaint are viable, a preliminary injunction is not appropriate. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc)).

Though not entirely clear from the complaint itself, it appears that Taylor's retaliation claim is asserted under 42 U.S.C. § 1981, which the Supreme Court has somewhat recently interpreted to include racial discrimination claims involving retaliation. *See CBOCS, Inc. West v. Humphries*, 553 U.S. 442 (2008). The Sixth Circuit has characterized the elements of such a claim as follows:

> (1) [the defendant] engaged in protected activity, (2) the activity was known to the defendant, (3) the plaintiff was subjected to a materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action.

*Herrera v. Churchill McGee, LLC*, 13-5211, 2013 WL 6126150 (6th Cir. Nov. 21, 2013) (citing *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 485 (6th Cir.2010)).

The Court has already discussed in some detail the reasons that Taylor's complaint does not state a claim for racial discrimination under Section 1981. This count of the tendered Second Amended Complaint provides no additional facts that would make a claim under Section 1981 any more plausible. Further, as it relates specifically to retaliation, the complaint is completely devoid of any mention of a protected activity taken by the Taylor that might have resulted of having a hold placed on her check.[8] Taylor seemingly suggests that the Bank Defendants retaliated against her because she refused to provide them with confidential information or because she was African American. However, if these can be considered activities at all, they are not of the type of activities that are protected by Section 1981. *See Greene v. YRC, Inc.*, CIV.A. MJG-13-0653, 2013 WL 6537742 at * 9-10 (D. Md. Dec. 12, 2013) (citing *Mian v.*

---

[8] Courts that have considered motions to dismiss Section 1981 retaliation claims have dismissed complaints that fail to allege that the plaintiff engaged in any protected activity. *See, e.g.*, *Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, CIV.A. 3:11-617, 2012 WL 3562030 at *13-14 (M.D. Pa. Aug. 16, 2012).

*Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993)) (enumerating examples of activities protected under Section 1981, including the ability to "make and enforce contracts, sue or be sued, give evidence, etc.").  As such, Taylor's claim under Section 1981 for retaliation is futile, and the Court shall refuse her leave to file a Second Amended Complaint asserting such a claim.

2

The second enumerated cause of action that Taylor raises in her Second Amended Complaint is for conspiracy.  Though Taylor cites several cases discussing conspiracy, none of those cases appear to have any relevance to the circumstances of this case.  The facts associated with the conspiracy count of the complaint center on the conspiracy of Fry and James to discriminate against Taylor based on her race.  Applying the required deference to Taylor's complaint, the Court shall construe this claim as being made under 42 U.S.C. § 1985(3), the federal statute for conspiracy under civil rights laws.

In order for Taylor to establish a claim for conspiracy under Section 1985(3), she must prove the following:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Johnson v. Hills & Dales General Hospital,* 40 F.3d 837, 839 (6th Cir. 1944) (citing *Hilliard v. Ferguson,* 30 F.3d 649, 652–53 (5th Cir.1994)).  The Court need not pass the first of these elements, however, to determine that the facts as plead in the Second Amended Complaint do not state a claim for conspiracy under Section 1985 upon which relief may be granted.  Though

24

Taylor alleges that Fry and James conspired with one another to discriminate against her, both of the alleged conspirators are employees of Chase Bank. In the context of Section 1985(3) conspiracy claims, the Sixth Circuit has applied the "intracorporate conspiracy" doctrine, which states that, "[I]f all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (citing *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 510 (6th Cir.1991) ("In the present case, plaintiff is alleging a conspiracy between a school district superintendent, the executive director of the district, and a school administrator, all of whom are employees or agents of the Board. Since all of the defendants are members of the same collective entity, there are not two separate "people" to form a conspiracy"). Since both Fry and James were operating within the scope of their employment as members of a single entity, they could not conspire to discriminate against Taylor under Section 1985(3) as a matter of law. Thus, Taylor's conspiracy claim is futile and the Court shall deny her motion for leave to amend her complaint to include it.[9]

3

Taylor has also moved the Court for leave to introduce additional evidence. [R. 28]. Though this motion was raised separately, in substance, it is essentially a motion for leave to amend her complaint to allege additional facts. Thus, the Court shall analyze the motion under

---

[9] At an even more basic level, the same failure to allege facts supporting race-based discrimination that doomed Taylor's Section 1981 claims, also undermine her Section 1985 claim. *See Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) (In upholding the dismissal of a Section 1985 claim, the Sixth Circuit stated, "Nali's claim can survive only if he pleaded facts supporting that conclusion [that the alleged conspirators motives were racially based and supported by animosity toward the plaintiff].").

the aforementioned standard for considering whether to grant leave to allow the filing of an amended complaint.

Taylor seeks to add facts of an additional encounter that she had with the Bank Defendants. Specifically, Taylor claims that on August 17, 2013, she returned to the Hi Point Branch of Chase Bank and requested that Fry notarize her confidential document. Apparently, Taylor only showed Fry a portion of the document, and Fry insisted she would not notarize the document unless Taylor showed her the entire document. Taylor claims that she was denied notary services on the basis of her race and that she was subjected to different conditions than Caucasian customers. She also claims that Fry's demeanor was "unhelpful, unfriendly, and discriminatory." [R. 28 at 2]. As a result of these events, Taylor claims that she has suffered, "humiliation and embarrassment in front of other banking customers and employees, and emotional pain and distress." [R. 28 at 2].

This additional "evidence" suffers from the same problems that afflicted the previous three complaints. That is, Taylor has alleged facts that Fry did not notarize her document, and has stated generalized conclusions that expressed her own belief that Fry discriminated against her on the basis of race, but has failed to allege any facts that would give rise to a reasonable inference that the latter reason factored into the former action. Taylor has alleged no facts that would suggest that the Bank Defendants refused to provide her with notary services on the basis of her race. Further, the addition of these facts and conclusions to the previous complaints make none of the asserted claims more plausible. Therefore, allowing Taylor to include this information in her complaint would be futile, and the Motion for Leave to Present Additional Evidence, shall be denied.

Before leaving this motion, an additional issue merits brief discussion by the Court. In their response to Taylor's motion for leave to file new evidence, the Bank Defendants indicated that Fry's actions comported with Chase Bank's policy that requires a notary to review each page of the document to be notarized to ensure there are no anomalies. [R. 30 at 3]. In her reply, Taylor asserts that Chase Bank does not even have a written notary banking policy. [R. 31 at 2]. This prompted a new round of briefing wherein the Bank Defendants sought leave to file a sur-reply [R. 32] and then tendered a sur-reply [R. 32-3]. These filings undertake to explain Taylor's confusion about the notary policy. They also reveal that, as a result of this recent encounter, Taylor has filed a duplicative state law action and a bar complaint against the attorneys of the Bank Defendants. Taylor has moved to strike these filings. [R. 34].

The Court need not embroil itself into these issues, however, because they are largely irrelevant to the outcome of this case. Even if Chase Bank did not have a written, company-wide policy regarding notarizing documents, that fact alone does not boost Taylor's claims from possible to plausible. Taylor's additional "evidence" is not ineffectual because she has not shown that Chase Bank did not have a policy governing Fry's actions, but because she has not shown any facts to demonstrate that Fry's actions were in any way motivated by Taylor's race. As for the additional state court litigation and the bar complaint, those issues are beyond the scope of this Court. Upon the filing of this Order, the Court will have resolved all issues pending in this case, and the derivative matters referenced in the sur-reply shall be the concern of the Kentucky state courts and Kentucky Bar Association. Thus, the Bank Defendants' motion for leave to file a sur-reply and Taylor's motion to strike that sur-reply shall be denied as moot.

IV

Finally, Taylor has filed a Motion for Partial Remand and Stay of all Proceedings. [R. 19]. In that motion, Taylor seeks "remand of the original complaint, application for entry of default, and notice-motion-order prior to May 3, 2013 or Removal (DN 1)." [R. 19 at 4]. Taylor argues that remand is necessary because, "removal was improper, erroneous, and suspicious for defendants James and Fry's failure to 'plead or otherwise defend' as required by Kentucky Rules of Civil Procedure ("KRCP") 55.01 and to answer Complaint within 20 days under 12(a)(1)(A), Taylor did tender a copy of entry of default to the State court, and this default judgment was appropriate." [R. 19 at 2]. By previous Order, this Court has already addressed these issues. [R. 15]. As stated in that Order, there is no record that default judgment has ever been entered in this case, nor would such a judgment have been appropriate under the circumstances. [R. 15 at 3]. Further, as previously discussed, the Bank Defendants' removal of this case and defensive pleading was timely. [R. 15 at 1-2]. Once again, the Court finds that this case was properly removed and is properly before this Court. As such, Taylor's motion for remand shall be denied.

V

In sum, the fatal flaw that dooms Taylor's claims is less of a technical failure by Taylor to articulate the law, but rather the simple omission of the facts of her story which would suggest that Chase Bank and its employees violated that law in its interaction with her. That is to say, Taylor did not explain how the Bank Defendants' seemingly benign actions constituted racial discrimination, intentional infliction of emotion distress, or her various other claims. At the conclusion of her response to the first motion to dismiss, Taylor asks the Court to allow her to amend her complaint should any defects be found. However, since the Bank Defendants filed

their first motion to dismiss, clearly airing their objections to the complaint, Taylor has twice

endeavored to amend her complaint and on another occasion sought leave to add new facts. As

discussed above, none of these additional filings sufficiently elaborated on how the Bank

Defendants' conduct violated the laws that she cites. Thus, the Court assumes that she is simply

unable to do so. This is true even though Taylor is preceding *pro se*. Though Taylor is not an

attorney and has not retained one, to be clear, she is no novice with the legal system. In this

Court alone Taylor has initiated four actions, and the record indicates that she has filed at least

one additional claim in state court and at least one bar complaint. Her pleadings are formatted

correctly, contain many legal citations, and often correctly set forth the law. Though Taylor has

been given the required deference, the Court here acknowledges that she has demonstrated that

she would have been capable of articulating the requisite facts showing her claims to be plausible

if any such facts existed. Thus, no further curative amendments shall be permitted.

However, as Taylor is a *pro se* litigant and is without formal training in the law, the Court

does feel compelled to extend a word of caution to her about filing claims in federal court when

there are no factual circumstances to support the causes of action she alleges. It is simply not the

case that anyone who pays the Court's filing fee may air any grievance in federal court, no

matter how speculative or grounded in fact. Federal substantive and procedural laws contain

provisions that can cause plaintiffs alleging baseless claims to be sanctioned by the court or

responsible for paying the attorney's fees of the adversary that was wrongfully hauled into court.

It has been long recognized that Federal Rule of Civil Procedure 11 applies to *pro se* plaintiffs,

and permits sanctions by the Court when the asserted action is frivolous or without evidentiary

support. *Graham v. Liberty Mut. Ins. Co.*, 1:08-CV-299, 2009 WL 1034942 at *4 (E.D. Tenn.

Apr. 17, 2009) (citing *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 564 (1991)). Under 42 U.S.C. § 1988, a prevailing defendant may recover attorney's fees when the Court finds that the "plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45 (2011). The purpose of that provision is to "protect defendants from burdensome litigation having no factual basis." *Id*. (citing *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 420 (1978)). Additionally, under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.[10]

The Court does not at this time make any findings that these provisions are applicable here and *sua sponte* assess sanctions or require fee shifting. However, the Court does alert Taylor to the possibility that such consequences exist in the federal system and could be requested by future defendants or assessed by the Court if her claims are found to be unsupported by fact and frivolous. This warning is certainly not given to discourage Taylor from filing whatever meritorious claims that she might have, but to provide guidance going forward. Due to the somewhat erratic filing in this case, the attorney's fees brought upon the Bank Defendants as a result Taylor's claims are doubtlessly very significant. Were a similar amount of fees to be shifted to Taylor as a result of a future claim, it would likely impose upon Taylor an unexpected and substantial financial burden.

---

[10] As the Court has discussed in previous opinions, there is some debate as to whether this statutory section is appropriately applied to *pro se* defendants. *See Canning v. Poole*, CIV. 10-16-GFVT, 2013 WL 5217646 at *6 (E.D. Ky. Sept. 13, 2013).

## VI

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

(1)     The Defendants' Motion to Dismiss [R. 6] is **GRANTED**;

(2)     The Defendants' Second Motion to Dismiss [R. 16] is **GRANTED**;

(3)     The Plaintiff's Motion for Leave to File a Second Amended Complaint [R.11] is **DENIED**;

(4)     The Plaintiff's Motion for Partial Remand and a Stay [R. 19] is **DENIED**;

(5)     The Plaintiff's Motion for Leave to File Additional Evidence [R. 28] is **DENIED**;

(6)     The Bank Defendants' Motion for Leave to File a Sur-Reply [R. 32] and the Plaintiff's Motion to Strike that Sur-Reply [R. 34] are **DENIED**, as moot;

(7)     The Bank Defendants' Motion for Expedited Status Conference [R. 37] is **DENIED**, as moot;

(8)     The Plaintiff's claims against the Bank Defendants are **DISMISSED**;

(9)     All claims being resolved, the Court will enter an appropriate **JUDGMENT**; and

(10)   This case is **STRICKEN** from the active docket of this Court.

This 8th Day of January, 2014.



31